UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT A. LOPEZ, <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., RASIER, LLC, MILE ST. JACQUES, and SIMONE ABRAHAM, <br><br> Defendants. | Civil Action No. 1:20-cv-10183-IT |

MEMORANDUM & ORDER

September 20, 2021

TALWANI, D.J.

Pending before the court are Defendant Uber Technologies, Inc.'s ("Uber") Motion for a Protective Order [#42] and Plaintiff Albert Lopez's Motion to Compel [#44]. For the following reasons, Uber's Motion for a Protective Order [#42] is DENIED, and Lopez's Motion to Compel [#44] is GRANTED IN PART and DENIED IN PART.

I.   Background

   A.   *Factual Allegations*

This litigation arises out of an alleged car accident. Compl. 1 [#1-1]. Lopez claims that while he was walking in a crosswalk, Defendant Milo St. Jacques struck him from behind with a car and caused him personal injuries. Id. at ¶¶ 12-16. St. Jacques denies striking Lopez. St. Jacques Answer ¶ 13 [#22].

Lopez filed this action against St. Jacques, Uber and an Uber subsidiary, Rasier, LLC (collectively "Uber"), and Simone Abraham, the owner of the car that St. Jacques was driving. Compl. ¶¶ 2-6 [#1-1]. Lopez claims that the car was being operated under a lease to and under

the control and authority of Uber, that St. Jacques was an Uber driver, that St. Jacques was Uber's agent and employee, and that Uber is vicariously liable for St. Jacques' negligence. Id. at ¶¶ 8-11, 23, 27-31. Uber denies that there was any employment or agency relationship between Uber and St. Jacques. Uber Answer ¶¶ 8-11, 23, 27-29 [#10]; Raiser Answer (same) [#11].

    B.    *Discovery Dispute*

Uber's Motion for a Protective Order [#42] states that Lopez has propounded two sets of requests for production to Uber and its subsidiary, each containing more than 100 requests, and that many of these requests "are not limited in time, location, or scope." Defs' Mem. 1 [#43]. Uber states further that it has produced thousands of pages in response to these requests but that Lopez (1) insists that Uber's responses are insufficient, (2) has refused to identify or clarify what documents are lacking, and (3) has suggested that Uber "should produce the same documents that were produced in a 2013 California class action lawsuit," which Uber contends has no relevance to the present matter. Id. Uber explains that, even if it were to produce the documents related to the class action, Lopez has stated that such a response would be insufficient and would lead to motion practice. Id. at 2. Uber concludes that Lopez's demands fail to comply with the requirements of reasonable particularity under Fed. R. Civ. P. 34(b) and proportionality under Fed. R. Civ. P. 26(b), and it therefore requests entry of a protective order to end what it characterizes as Lopez's "increasingly harassing, ambiguous, and burdensome document request." Id. at 2.

Lopez's Motion to Compel [#44] requests that the court strike "Uber's boilerplate objections" and order that Uber produce all documents requested in Lopez's second set of requests and requests numbers 12-23 and 68-72 in his first set of requests." Mot. to Compel 2 [#44]. Lopez contends that these requests are directed to "the key liability question concerning

. . . whether, under Massachusetts law, Uber drivers are employees or independent contractors." Pls' Mem. 1 [#45].

II.     **Standard of Review**

The scope of discovery is governed by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(c), in turn, allows a responding party to move for an order limiting or prohibiting discovery "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . ."

Rule 34 governs requests for production of documents, electronically stored information, and tangible things. Fed. R. Civ. P. 34. Rule 34(b)(1)(A) directs that the request "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A).

Rule 37(a) governs motions to compel discovery responses. Fed. R. Civ. P. 37(a). Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv).

However, the court has "broad discretion to manage discovery matters," Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003), and may decline to compel. In addition, the court must "limit discovery if it determines that the discovery sought is

3

(1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues." In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-cv-02419, 2014 WL 12814933, at *2 (D. Mass. Feb. 7, 2014); see also Fed. R. Civ. P. 26(b)(2)(C).

### III.   Discussion

#### A.   Common Law of Respondeat Superior[1]

The familiar agency doctrine of *respondeat superior* is the "proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment." Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 319–20, 780 N.E.2d 447 (2002). To establish common law respondeat superior, a plaintiff must prove that (1) an employer-employee relationship existed at the time of the incident in question and (2) the employee's conduct was within the scope of his employment. Id. at 321-22. Whether an employer-employee relationship exists is fact dependent. Id. at 322.

Several factors are relevant to the court's analysis, "all of which are oriented toward determining whether an individual's conduct was subject to the principal's control or right of

---

[1] At a hearing on the motions, the court suggested that the issue animating the parties' dispute is whether Uber can be held vicariously liable for St. Jacques' alleged negligence. That turns not on whether St. Jacques was an employee or an independent contractor under various employment statutes, but rather on whether a master-servant or principal-agent relationship existed, as defined under state common law. The parties agreed with this characterization, and the court directed supplemental briefing on the issue. Elec. Clerk Notes [#54]; see Mem. [#55]; Mem. [#56].

control." Peters v. Haymarket Leasing, Inc., 64 Mass. App. Ct. 767, 774, 835 N.E.2d 628 (2005).

These include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business.

Id. at 774 n.10 (quoting RESTATEMENT (SECOND) OF AGENCY § 220(2)). "It is the right to control, as opposed to actual control, that is determinative," and "[e]ven a very attenuated right of control may give rise to an employment relationship" for purposes of *respondeat superior*. Id. at 774 (citing Dias, 438 Mass. at 322-23 & n.8).

    *B.    Requests for Production*

It is against this common law backdrop that the court considers Uber's Motion for a Protective Order [#42] and Lopez's Motion to Compel [#44]. Uber seeks an order deeming its responses and supplemental responses adequate and proportional to the needs of the case, sustaining all objections it has asserted, and finding that no further discovery will be required in response to such requests. Defs' Mem. 12 [#43]. Lopez's Motion to Compel [#44], in turn, requests "[t]hat Uber's boilerplate objections be stricken." Mot. to Compel 2 [#44]. Both requests sweep with too broad a brush: whether an objection should be sustained, a response compelled, or a protective order granted depends on the specific requests at issue. Accordingly, the court turns to the individual requests for production that remain at issue.

1.      Plaintiff's First Document Request

Lopez moves to compel documents responsive to requests numbers 12-23 and 68-72 in his first document request. Id. Requests number 13, 15, 16, 17 and 18 seek the following:

**REQUEST NO. 13** All documents concerning the relationship between Uber and MILO ST. JAQUES [sic] and between Uber and SIMONE ABRAHA [sic].

**REQUEST NO. 15** The Uber Driver, MILO ST. JAQUES's [sic] entire qualification file, including the files required to be kept pursuant to 49 C.F.R. § 391.51 and all notes, records, and documents included in the Uber Driver's qualification file.

**REQUEST NO. 16** The Uber Driver, MILO ST. JAQUES' s [sic] record of duty status or driver daily logs and all documents or electronic data or information that provide date, time and/or location information to audit or verify those logs for one hundred eighty (180) days before the Crash of September 2nd, 20 17, the date of the Crash, and thirty (30) days after the Crash, including each and every version or draft of each daily log.

**REQUEST NO. 17** For the period beginning 30 days prior to the Crash of September 2, 2017, and ending 48 hours after the Crash produce all of the following documents pertaining to the Uber vehicle and MILO ST. JAQUES [sic], Uber Driver in your possession if not previously provided in response to another Request:
   (a) dispatch records;
   (b) mobile radio records;
   (c) pre-rate records;
   (d) wrecker or tow truck records;
   (e) pick-up and delivery records;
   (f) trip summaries;
   (g) trip planning or route sheets;
   (h) delivery manifests and bills of lading;
   (i) personal or business credit card receipts;
   (j) toll tickets;
   (k) fuel receipts;
   (l) weight tickets;
   (m) fuel tax records;
   (n) state entry and departure records;
   (o) expense sheets;
   (p) any inspections of the Uber vehicle by you RASIER LLC or by any state or federal D.O.T. personnel or law enforcement officer;
   (q) rental or lease contracts involving the Uber vehicle; and
   (r) seal records for the passengers transported by the Uber Driver, MILO ST. JAQUES, on September 2, 2017.

>   **REQUEST NO. 18** All documents concerning the employment or independent contractor relationship between MILO ST. JAQUES [sic] and Uber, including, but not limited to, any agreements between him and Uber.

Responses to First Requests 9-14 [#43-1]. Uber has a number of overlapping objections to these requests. First is that the requests are overly broad and unduly burdensome in seeking information that is irrelevant and unlikely to lead to the discovery of admissible evidence and not proportional to the needs of the case. Id. Second is that the requests presuppose an employment or agency relationship between Uber and St. Jacques, which Uber denies. Id. Third is that some of the requests presuppose that Uber is a motor carrier or common carrier, which Uber equally denies. Id. Fourth is that the requests are "not sufficiently limited to time, place, or scope." Id. And fifth is that certain terms in the requests—specifically "qualification file" in request 15, "daily log" in request 16, and "Uber vehicle" and "inspections" in request 17—are vague and ambiguous. Id. Uber states further that it has already produced St. Jacques' Technology Service Agreement with Uber, St. Jacques' background check reports, documents submitted by St. Jacques when he signed up to use the driver version of the Uber application ("driver app"), St. Jacques' speed and GPS data on the day of the accident, the Incident Report Form related to the accident, and St. Jacques' "app status data" for the twenty-four-hour period prior to the accident. Id. Uber does not, however, state whether any documents are being withheld on the basis of each of its objections to these requests, as required by Fed. R. Civ. P. 34(b)(2)(C).

As discussed above, the issue at the center of this dispute is whether an employment relationship, as set forth in Massachusetts common law, existed between Uber and St. Jacques at the time of the crash. So, to the extent that Uber objects to the requests as irrelevant where they are directed at this very issue or complains that the request presupposes such a relationship and is, on either of those bases, withholding documents that would bear on the nature of that

relationship, the Motion to Compel [#44] is allowed. Regarding Uber's objection as to the "time, place, or scope" of the requests, the court limits the scope of the requests to those that bear on Uber's relationship with users of the driver app (1) in Massachusetts (2) from the time that St. Jacques signed up to use the driver app until the time of the crash. Requests for documents relating more generally to the relationship between Uber and users of the driver app are not proportional to the needs of the case.

> Request number 12 and 14 seek:
>
> **REQUEST NO. 12** An organizational chart of your company, Uber, at the time MILO ST. JAQUES [sic], the Uber Driver was hired or contracted by you, Uber, at the time of the Crash and today.
>
> **REQUEST NO. 14** A list of all subsidiary, related, parent, wholly or partially owned entities of any named Defendant, RASIER LLC, RASIER (FL)LLC and/or UBER TECHNOLOGIES LLC [sic] in this case.

Id. at 10. Uber objects that the requests are not sufficiently limited in time, place, or scope; that Rasier (FL), LLC is not a defendant in this action; and that request number 14 calls for the creation of documents not already in existence. Id. It is not clear to the court what relevance these requests have to the issue of Uber's relationship with St. Jacques, and Lopez's memorandum contains no argument related to these requests. The Motion to Compel [#44] is accordingly denied without prejudice as to these requests.[2]

---

[2] Counsel are reminded of their obligations under Local Rule 37.1(b)(4)-(5), which requires a party filing a discovery motion to "state **with particularity**" the following:

> (4) Each interrogatory, deposition question, request for production, request for admission or other discovery matter raising an issue to be decided by the court, and the response thereto; and
>
> (5) A statement of the moving party's position as to each contested issue, with supporting legal authority, which statement shall be set forth separately immediately following each contested item.

L.R. 37.1(b)(4)-(5) (emphasis added).

Requests number 19 through 23 seek the following:

**REQUEST NO. 19** All documents concerning or describing the relationship between Uber and Uber drivers.

**REQUEST NO. 20** All documents concerning the protocols, procedures, guidelines, qualifications, and standards used by Uber when evaluating an application to become an Uber driver.

**REQUEST NO. 21** All documents prepared or used by Uber concerning the standards, requirements, rules and guidelines that an Uber driver must meet and adhere to while operating as an Uber driver.

**REQUEST NO. 22** All documents concerning grounds for terminating an Uber driver.

**REQUEST NO. 23** All Uber policies, procedures, rules, standards, codes of conduct, and requirements provided to Uber driver.

Id. at 14-17. Uber again objects to these requests on the grounds that they presuppose an employment or agency relationship between Uber and users of the driver app. Uber has again failed to specify whether it is withholding documents on that basis. To the extent that Uber has any documents responsive to these requests that bear on the relationship between Uber and St. Jacques or other Massachusetts-based users of the driver app from the time that St. Jacques signed up to use the driver app until the time of the crash, the Motion to Compel [#44] is allowed.

Finally, Lopez moves to compel documents responsive to requests numbers 68 through 70. Mot. to Compel 2 [#44]. Requests number 68 through 70 seek the following:

**REQUEST NO. 68** All contracts, leases, or other written agreements between Uber and MILO ST. JAQUES [sic] in effect during the relevant time period, including those relating to the transportation of Passengers on the SUV at the time of the Crash.

**REQUEST NO. 69** Any and all communications regarding this Crash, your safety record, or your relationship, with any employee, agent, attorney, expert, contractor or other representative of Uber.

**REQUEST NO. 70** All documents that reflect, that MILO ST. JAQUES [sic], the Uber Driver worked for, communicated with, drove for, transported passengers for, performed

9

services for or was otherwise affiliated with Uber or any subsidiary, related, parent, wholly or partially owned entities of the Defendant.

Responses to First Requests 45-47 [#43-1]. As above, Uber objects to any presupposition of an employment or agency relationship between Uber and St. Jacques in the request, including through use of terms such as "the Uber Driver," "worked for," "drove for," and "transported passengers for." Id. Again, to the extent that Uber is withholding documents based on this objection, the Motion to Compel [#44] is allowed but limited to documents related specifically to St. Jacques or to other Massachusetts-based users of the driver app from the time that St. Jacques signed up to use the driver app until the time of the crash.

Uber also objects to requests 68 and 70 to the extent that they "presume[] that there were passengers in St. Jacques' vehicle at the time of the accident, as there was none." Id. Uber has once again failed to indicate whether it is withholding documents based on that objection, id., and to the extent that it is, the Motion to Compel [#44] is allowed.[3]

2. Plaintiff's Second Set of Requests

Lopez also moves to compel "all requested documents in the plaintiff's September 11, 2020 more specific requests." Mot. to Compel 2 [#44]. These "more specific requests" seek, among other things:

- Uber's quality standards for drivers;
- Uber's passenger rating system for drivers;
- Documents and emails to drivers about how to improve their passenger ratings;
- Uber's metrics, factors, and methods of evaluating a driver's passenger rating;

---

[3] Lopez's motion also seeks responses to requests 71 and 72. Mot. to Compel 2 [#44]. Lopez has not attached his first request for production of documents to his Motion to Compel [#44], and the court has therefore relied on Uber's responses to the first request for production, attached as an exhibit to its Motion for a Protective Order [#42], for the text of the requests. See Responses to First Requests [#43-1]. Uber's responses end with request number 70. See id. at 46. Accordingly, the court is unable to review requests 71 and 72, and Lopez's Motion to Compel [#44] is therefore denied as to those requests.

- Uber's authority to terminate a driver for violating Uber's quality standards;
- Uber's method and standards for deactivating a driver's account for failing to meet Uber's quality standards or based on passenger ratings;
- Documents concerning the grounds for termination of a driver;
- Uber's practice and standards of permitting a driver to regain his use of the driver app after it has been deactivated;
- Uber's method of collecting fees from passengers and paring drivers for the transportation of passengers;
- Questions asked during Uber's interview of applicants applying to become drivers;
- Uber's promotional and marketing literature;
- Documents concerning Uber's providing of suggestions, recommendations, requirements, or standard to drivers regarding, among other things, vehicle cleanliness, driver appearance and attire, how to treat passengers, how to pick up passengers, tips, and the music played in the car while transporting a passenger;
- Documents regarding Uber's "Best Practices" program;
- Documents related to training courses provided to drivers, including Uber's attendance requirement;
- Documents describing Uber's method of calculating fees, rate of pay to drivers, Uber's percentage of the fares paid by passengers, and payment of an hourly rate to drivers;
- Documents explaining the Uber transportation system and devices to drivers and passengers;
- Documents concerning Uber's hiring process; and
- Documents concerning Uber's explanation to drivers of the insurance policy covering drivers while logged into the driver app, transporting a passenger, or on the way to picking up a passenger.

Responses to Specific Requests 1-21 [#43-5]. In response, Uber makes the same types of objections already discussed above. First, it objects that many of the requests presuppose an employment or agency relationship between Uber and St. Jacques or drivers more generally. Except in response to a handful of requests (numbers 4, 10, 13, 17, 18, and 23), in which it states that it has no responsive documents, Uber does not indicate whether it is withholding documents based on this objection. Id. Again, the Motion to Compel [#44] is allowed insofar Uber has responsive documents that have any bearing on the relationship between Uber and St. Jacques. As to Uber's further objection that the requests are not limited in scope, the court limits the production of responsive documents to those related specifically to St. Jacques or to other

11

Massachusetts-based users of the driver app from the time that St. Jacques signed up to use the driver app until the time of the crash.

### IV.     Conclusion

Uber's <u>Motion for a Protective Order</u> [#42] is DENIED, and Lopez's <u>Motion to Compel</u> [#44] is GRANTED IN PART and DENIED IN PART as specified herein.

IT IS SO ORDERED.

September 20, 2021                                           /s/ Indira Talwani
                                                                                            United States District Judge